MARVIN EUGENE HUFF, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Huff v. Commissioner
Docket No. 23532-91
United States Tax Court
T.C. Memo 1994-451; 1994 Tax Ct. Memo LEXIS 455; 68 T.C.M. (CCH) 674; September 7, 1994, Filed *455 Decision will be entered under Rule 155. Marvin Eugene Huff, pro se. For respondent: Donald R. Gilliland. WRIGHT
WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: For taxable years 1987, 1988, and 1989 respondent determined the following deficiencies in, additions to, and a penalty in petitioner's Federal income tax: Additions to Tax
Sec.
Sec.
Year
Deficiency
6653(a)(1)(A)
6653(a)(1)(B)
1987
$ 4,572.41
$ 228.62
50% of the interest
due on $ 4,572.41
Additions to Tax
Penalty Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6661(a)
6662
1988
$ 7,310.41
$ 662.72
$ 365.52
$ 1,603.10
-0-
1989
2,561.39
-0-
-0-
-0-
$ 395.27
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions by both parties, which will be given effect in the Rule 155 computation, the issues for decision are: (1) Whether petitioner had Schedule C expenses and cost of goods sold in excess of amounts allowed by respondent for taxable years 1987, 1988, and 1989, *456 and whether petitioner failed to report Schedule C gross receipts for taxable year 1988. We hold that petitioner did have Schedule C expenses and cost of goods sold in excess of the amounts allowed by respondent for the years at issue. We further hold that petitioner did fail to report Schedule C gross receipts for 1988. (2) Whether petitioner had unreported capital gains on the sale of two parcels of property in taxable years 1988 and 1989 as determined by respondent. We hold that petitioner did fail to report gain on the sale of one such property. (3) Whether petitioner received a taxable distribution of $ 240 from his Individual Retirement Account (IRA) in 1988, and if so, whether the distribution is subject to the premature distribution penalty tax under section 72(t). We hold that petitioner did receive a taxable distribution subject to the penalty tax under section 72. (4) Whether petitioner is liable for the addition to tax for failure to timely file his 1988 return under section 6651(a)(1). We hold that he is. (5) Whether petitioner is liable for additions to tax for negligence under section 6653(a) for taxable years 1987 and 1988, and for an accuracy-related penalty *457 under section 6662 for taxable year 1989. We hold that petitioner is not liable for negligence for any of the years at issue. (6) Whether petitioner is liable for the addition to tax due to a substantial understatement of income tax under section 6661 for taxable year 1988. We hold that he is not. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioner resided in Dadeville, Alabama, at the time he filed the petition in this case. During the years at issue, petitioner operated a pulpwood logging business as a sole proprietorship. Petitioner cut, hauled, and sold timber. Petitioner received roughly $ 40 per cord for timber upon delivery to a woodyard. The $ 40 figure is what remains after the woodyard deducts $ 2.50 to $ 3 per cord for workers compensation and a severance tax of $ .10 per cord. Generally, petitioner paid between $ 25 and $ 38 per cord, which included a stumping fee and labor costs for cutting and hauling. Petitioner purchased two trucks for use in his logging business, one in 1987 and the other in 1988, at a cost of $ 1,850 each. In *458 addition, petitioner used a 1974 pickup truck in his business; the truck had no windshield and no doors. Petitioner sustained a job-related injury in 1986 wherein all the fingers on one hand were nearly cut off. During the years at issue, petitioner continued to work in spite of the injury. Petitioner twice underwent surgery on his hand; the first surgery resulted in petitioner receiving over 100 stitches. Petitioner was informed that he would need additional surgery on his hand but could not afford to take time off from work. Due to the injury, petitioner hired laborers to assist in cutting and hauling. In addition to his logging work, petitioner maintained a large garden every year which served as the only source of food for his family. Petitioner has nine children. On February 10, 1990, a tornado destroyed a storage shed which contained petitioner's business records. Petitioner has no training in bookkeeping or finances and has little understanding of tax returns. Petitioner was unaware that he was required to file a Schedule C with respect to his logging business and used the Schedule A, furnished to him by the Internal Revenue Service (IRS) in his requested Form 1040 *459 package, to claim his business expenses in 1987. The return was sent back to him with a Schedule C attached; petitioner reported only net figures on Schedule C based upon the expenses he claimed on Schedule A. For tax year 1988, petitioner used only a Schedule C to claim his logging receipts and expenses. For taxable year 1989, petitioner again used Schedule A to report his expenses and Schedule C to report his net profit figure. Taxable Year 1987
The parties have stipulated that petitioner had gross receipts from his logging business in 1987 totaling $ 21,612.23. Petitioner reported only a net profit figure on his 1987 Schedule C and mistakenly reported his business expenses on Schedule A. On petitioner's 1987 Schedule A, with respect to the logging business, petitioner claimed expenses in the amounts of $ 11,136, for timber and pulpwood, and $ 4,022, for parts, repairs, tags, and gas. Respondent's determination of petitioner's allowed business expenses and cost of goods sold for 1987 is as follows: Amount Allowed
Item
by Respondent
Cost of goods sold
$ 1,424.13
Depreciation [1]
335.69
Car and truck
1,787.13
Labor
2,906.33
*460 Respondent allowed only those items in amounts for which petitioner was able to provide documentation. Taxable Year 1988
Respondent used the bank deposits method to reconstruct petitioner's 1988 taxable income. The parties stipulate that total deposits into petitioner's bank account were in the amount of $ 59,485.47. Respondent determined that when the known sources of income are eliminated, there is an unexplained difference of $ 14,887.29. Petitioner reported Schedule C gross receipts in the amount of $ 18,659.91 in 1988. Petitioner's claimed business expenses and cost of goods sold and respondent's adjustments thereto for 1988 are as follows: Amount
Amount Allowed
Item
Claimed
by Respondent
Cost of goods sold
$ 9,289.88
$ 8,300.82
Insurance
1,823.73
-0- Interest
3,133.82
-0- Repairs
1,642.00
841.01
Taxes
370.74
-0- Utilities
110.80
-0- Gasoline and tags
3,240.59
2,383.35
Depreciation
200.00
405.79
Service charge
60.00
60.00
Rent
600.00
600.00
In 1988, petitioner was able to document business expenses in the amounts of $ 1,850 for a truck purchase, $ 8,300.82 for timber purchases, $ 3,002.53 for gasoline, $ 173.60 for truck tags, *461 $ 200 for the purchase of a chainsaw, $ 452.45 for truck repair, $ 329.72 for chainsaw repair, $ 58.84 for a truck battery, $ 60 for bank service charges, and $ 600 for rent. Using the applicable methods of depreciation, respondent calculated petitioner's 1988 depreciation deduction to be $ 405.79. Respondent allowed expenses and cost of goods sold in amounts for which petitioner was able to provide documentation. Petitioner made a $ 240 withdrawal from his IRA in 1988. Respondent determined that petitioner received an early distribution from his IRA, which he not only failed to roll over, but also failed to report as income on his 1988 return. As of December 31, 1988, petitioner had not attained the age of 59-1/2. Respondent further determined that petitioner is liable for the 10-percent premature distribution penalty tax under section 72(t). At some time during the 1960s, petitioner purchased a lot together with a house for $ 10,000. The Bank of Dadeville held a mortgage on this property. Of the $ 10,000 purchase price, respondent determined that $ 3,000 is attributable to the cost of the lot itself. Petitioner claims that $ 8,000 is attributable to the cost of the lot. *462 In 1978, the house burned to the ground; petitioner's house was not insured. The lot of real property was sold for $ 8,000 in 1988. Respondent determined that petitioner realized a gain of $ 5,000 on the sale of the lot which petitioner failed to report. In July 1976, petitioner purchased a retail store for $ 18,587.50 and operated the store until July 1978. In 1987, petitioner installed two gas tanks at the store at a cost of $ 3,351.46, for the tanks and $ 750 for labor. Petitioner and his son reopened the store in the summer of 1988. Due to his injury, the bank permitted petitioner to make interest payments only on the store. In December 1988, petitioner sold the store together with its inventory for $ 35,887.32. [1] Of the purchase price, $ 6,000 was paid to petitioner in cash on the date of the sale, and a note and mortgage were given to petitioner for the balance. *463 In determining petitioner's adjusted basis in the store, respondent, using the 20-year straight-line method of depreciation under section 167 as in effect at the time the store was purchased, calculated petitioner's allowable depreciation deduction to be $ 929.38 per year for the 2 years of operation resulting in a total basis reduction of $ 1,858.76. Petitioner's basis is then increased by $ 4,101.46 for the cost incurred by installing the gas tanks. Thus, petitioner's 1988 adjusted basis in the retail store, according to respondent, was $ 20,830.20 ($ 18,587.50 less $ 1,858.76 plus $ 4,101.46). Respondent determined petitioner's reportable income on the sale using the installment sales method under section 453(a) and calculated that petitioner had a capital gain of $ 2,500 on the sale of the store, which he failed to report. Taxable Year 1989
The parties stipulate that petitioner had gross receipts totaling $ 17,797.13 from Co-op Pulpwood Co. in taxable year 1989. Petitioner's available canceled checks and invoices for 1989 reflect business expenses in the amounts of $ 1,786.27 for business equipment repairs, $ 3,997.34 for truck expenses, and a cost of goods sold in *464 the amount of $ 5,992.80 [2] for timber purchases. Petitioner used Schedule A to report his business expenses and used Schedule C to report his net figures. For 1989, petitioner reported his business expenses under the "Job Expenses and Most Other Miscellaneous Deductions" category of Schedule A in the amount of $ 11,791.68. Respondent determined that petitioner is allowed only those deductions that are documented. Additionally, respondent determined that petitioner failed to report a capital gain in 1989 in the amount of $ 720.16 with respect to the 1988 sale of the retail store. In 1989, petitioner received principal payments totaling $ 1,714.66 from the sale of the store. OPINION Issue 1. Schedule C Gross Receipts, Expenses, COGS
The first issue for our decision, which relates to petitioner's logging business, is whether petitioner *465 is entitled to cost of goods sold and Schedule C expenses in excess of amounts allowed by respondent for taxable years 1987, 1988, and 1989, and whether petitioner failed to report Schedule C gross receipts for taxable year 1988. [3]Petitioner bears the burden of proving that respondent's determinations, including unreported income, are incorrect. Rule 142(a); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). Schedule C Expenses and COGS for 1987, 1988, and 1989
Respondent contends that petitioner is entitled to claimed business expenses and cost of goods sold for the years at issue only to the extent petitioner was able to provide documentation for such items. Deductions are a matter of legislative grace, and petitioner bears the burden of proving his entitlement to any deduction claimed on his returns. INDOPCO, Inc. v. Commissioner, 503 U.S.    , 112 S. Ct. 1039, 1043 (1992). *466 A taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions. Sec. 6001. Under certain circumstances, in which a taxpayer establishes his or her entitlement to a deduction, but does not establish the amount of the deduction, we are permitted to estimate the amount allowable. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). We may also, in appropriate circumstances, estimate a taxpayer's cost of goods sold. See Estate of Stein v. Commissioner, 25 T.C. 940, 957 (1956), affd. per curiam sub nom. Levine v. Commissioner, 250 F.2d 798 (2d Cir. 1958). There must be sufficient evidence in the record to permit us to conclude that a deductible expense or a cost of goods sold was incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). In estimating the amount allowable, we may bear heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, supra at 544. On February 10, 1990, a tornado *467 destroyed a storage shed containing petitioner's business records. Petitioner testified that he was unable to salvage all of his business records and as a result petitioner was unable to substantiate all of his claimed expenses and cost of goods sold at the time of audit. We find that petitioner's records were lost for reasons beyond his control. There is sufficient evidence in the record permitting us to conclude that deductible expenses and cost of goods sold were in fact incurred in at least the amount allowed by respondent. The record establishes that petitioner fully cooperated with the IRS from the audit level through the trial stage. Petitioner tried to obtain copies of some of his canceled checks but stated that he was unable to do so because it was too costly. We found petitioner to be a credible witness, and to the extent that petitioner has proven entitlement to a claimed business expense or a cost of goods sold, we estimate, pursuant to Cohan v. Commissioner, supra, that the amounts allowed are the amounts claimed by petitioner on his returns for the years at issue. 1988 Gross Receipts
Respondent claims that petitioner failed *468 to keep adequate records and chose to reconstruct petitioner's 1988 income using the bank deposits method. The parties stipulated that total deposits into petitioner's bank account were $ 59,485.47 in 1988. Respondent asserts that when known sources of funds are removed, an unexplained difference of $ 14,887.29 remains. Respondent argues that petitioner has provided no evidence indicating nontaxable sources for this discrepancy; thus, the $ 14,887.29 represents additional income to petitioner in 1988. It is well established that where a taxpayer fails to maintain adequate records, the Commissioner may prove the existence and amount of unreported income by any method that will clearly reflect the taxpayer's income. Sec. 446(b); Holland v. United States, 348 U.S. 121, 130-132 (1954); Harper v. Commissioner, 54 T.C. 1121 (1970). The premise underlying this method of income reconstruction is that, absent some explanation, a taxpayer's bank deposits represent taxable income. The total of all deposits is determined by respondent to arrive at the taxpayer's income. Adjustments are then made to eliminate deposits that reflect *469 nonincome items such as gifts, loans, transfers between bank accounts, and redeposits. Petitioner provided no evidence indicating that the excess deposits into his bank account in 1988 are attributable to nontaxable sources. Accordingly, respondent is sustained on this issue. Issue 2. Gains on the Sales of Real Property
Under section 1001(a), gain from the sale of property equals the excess of the amount realized over adjusted basis. Section 1011(a) provides that the adjusted basis of property equals its cost basis adjusted as provided in section 1016(a). Section 1016(a)(1) provides that proper adjustment shall be made to the basis for expenditures properly chargeable to the capital account. Section 1016(a)(2) provides that the adjusted basis of property shall be decreased by the amounts allowed or allowable as deductions for depreciation. Respondent determined that petitioner had unreported capital gain from the sale of two properties in 1988. Lot
At some time during the 1960s, petitioner purchased a lot together with a house for $ 10,000. Of the $ 10,000 purchase price, petitioner testified that $ 8,000 is attributable to the cost of the lot itself. The house *470 had little value and was uninsurable. In 1978, the house burned to the ground. The lot of real property was sold for $ 8,000 in 1988. Respondent contends that petitioner realized a $ 5,000 gain on the sale arguing that petitioner's cost basis in the lot was $ 3,000 and not $ 8,000. There is a discrepancy between the testimony and the stipulation of facts on this figure. Generally, stipulations are binding on the parties. Rule 91(e). One exception to this Rule gives the Court discretion not to be so bound when facts presented at trial or disclosed by the record are clearly contrary to those stipulated by the parties. Jasionowski v. Commissioner, 66 T.C. 312, 318 (1976). Due to other errors found in the stipulation of facts, [4] we find petitioner's testimony, with respect to the value of the lot at the time of purchase, to be more reliable than the figure stipulated. Accordingly, under the principles of section 1001, we find that petitioner realized no gain on the sale of the property as his cost basis in the lot was equal to the purchase price of the lot in 1988. *471 Retail Store
The second property, a retail store, petitioner purchased in 1976 for $ 18,587.50. Petitioner operated the store from July 1976 through July 1978. In 1987, petitioner installed two gas tanks at the store at a cost of $ 4,101.46. Together with his son, petitioner reopened the store in the summer of 1988. Petitioner sold the store in December 1988 for $ 35,887.32, and of that amount, petitioner received $ 6,000 in cash; a note was given for the balance. Petitioner's store had a cost basis of $ 18,587.50, the store's purchase price in 1976. In determining petitioner's adjusted basis in the store, respondent, using the 20-year straight-line method of depreciation under section 167, calculated petitioner's allowable depreciation deduction to be $ 929.38 per year for the 2 years of operation resulting in a total basis reduction of $ 1,858.76. Petitioner's basis is then increased by $ 4,101.46 for the cost incurred installing the gas tanks. Thus, petitioner's 1988 adjusted basis in the retail store, according to respondent, was $ 20,830.20 ($ 18,587.50 less $ 1,858.76 plus $ 4,101.46). We agree. Respondent determined petitioner's reportable income on the sale *472 using the installment sales method under section 453(a). Section 453(a) provides that income from an installment sale shall be taken into account under the installment method, except as otherwise provided. An installment sale means a disposition of property under terms where at least one payment is received in a tax year after the year in which the disposition takes place. Sec. 453(b)(1). The installment method requires a portion of payments received from an installment sale in a tax year to be included in gross income in the year received and permits the taxpayer to spread out the recognition of gain on the sale. Sec. 453(c). Generally, installment sales result in reportable income in an amount equal to the product of the amount received in the year of sale and the gross profit percentage. Sec. 453(a). The gross profit percentage is computed by dividing the gross profit (sale price less adjusted basis) by the total sale price. Sec. 453(c); sec. 15A.453-1(b), Temporary Income Tax Regs. Respondent calculated petitioner's gross profit to be $ 15,057.12 and the gross profit percentage to be 42 percent. Thus, after applying the gross profit percentage of 42 percent to the $ 6,000 cash *473 received by petitioner in December 1988, respondent determined petitioner had a capital gain in the amount of $ 2,520 for taxable year 1988 on the sale of the retail store. In addition, petitioner received principal payments totaling $ 1,714.66 in 1989 with respect to the sale of the store. When the gross profit percentage of 42 percent is applied to that amount, the resulting gain is $ 720.16 for 1989. We find respondent's calculations with respect to the sale of petitioner's store to be correct. Accordingly, respondent is sustained on this issue. Issue 3. IRA Distribution
The next issue for our decision is whether a distribution from petitioner's IRA in 1988 is includable in income, and, if so, whether petitioner is liable for the 10-percent additional tax on an early distribution from his IRA under section 72(t). Section 408(d)(1) provides the general rule that unless otherwise provided, any amount paid or distributed from an IRA is includable in the recipient's gross income for the year of receipt in the manner provided under section 72. The statute applies to petitioner's IRA distribution. Section 72(t) provides: (1) Imposition of additional tax. -- If any *474 taxpayer receives any amount from a qualified retirement plan * * *, the taxpayer's tax * * * for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.
Section 72(t)(2) provides for certain exceptions to the general rule contained in paragraph (1). Petitioner, however, provided no evidence to suggest that he fit within any of these enumerated exceptions. The legislative history suggests that one of the reasons for enacting section 72(t) was to deter the use of retirement savings for nonretirement use. H. Rept. 99-426 (1985), 1986-3 C.B. (Vol. 2) 1,728-729; S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 1, 612-613. Petitioner received an early distribution from his IRA in taxable year 1988, and having failed to show that any of the exceptions found in section 72(t)(2) apply, we find that petitioner is liable for the 10-percent additional tax pursuant to section 72(t) as determined by respondent. See Aronson v. Commissioner, 98 T.C. 283 (1992). Issue 4. Section 6651(a)(1) *475 Addition to Tax for Delinquency
The next issue for our decision is whether petitioner is liable for the addition to tax under section 6651 for failure to timely file his 1988 Federal income tax return. Section 6651(a)(1) imposes an addition to tax in an amount equal to 5 percent of the amount required to be shown as tax on a return for each month or fraction thereof for which a return is not filed, not to exceed 25 percent in the aggregate. The addition to tax under this section does not apply if the taxpayer establishes the failure to timely file was due to reasonable cause and not due to willful neglect. The burden of proof is on petitioner to show the failure is due to reasonable cause and not willful neglect. Rule 142(a); United States v. Boyle, 469 U.S. 241 (1985). In the instant case, respondent asserts that petitioner's 1988 return, due April 15, 1989, was received by the IRS May 19, 1989, and the envelope in which it was mailed indicated a postmark of May 16, 1989. A copy of petitioner's 1988 return indicated it was stamped received on May 19, 1989. Petitioner has presented no evidence indicating that his failure to timely file was due *476 to reasonable cause. Accordingly, the addition to tax under section 6651 for 1988 is sustained. Issue 5. Negligence
The fifth issue for our decision is whether petitioner is liable for an addition to tax for negligence under section 6653(a) for taxable years 1987 and 1988 and for an accuracy-related penalty under section 6662 for taxable year 1989. For taxable years 1987 and 1988, section 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is attributable to negligence or intentional disregard of rules or regulations, and section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. For taxable year 1989, section 6662 imposes an accuracy-related penalty for negligence in the amount of 20 percent of the portion of any underpayment attributable to negligence or disregard of rules or regulations. [5]Sec. 6662(a) and (b). Section 6662(c) provides that the term negligence includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term disregard includes any careless, reckless, or *477 intentional disregard. Negligence is defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence includes any failure to make a reasonable attempt to comply with the law. Secs. 6653(a)(3), 6662(c). Respondent's determination that petitioner's underpayment was due to negligence is presumptively correct and must stand unless petitioner can establish that he was not negligent. Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337. It is clear from the record that petitioner is an unsophisticated, low-income *478 taxpayer. Petitioner testified that he could not afford to hire anyone to prepare his taxes, and as he knew little about how to do so himself, he requested information from the IRS. The record indicates that petitioner was thoroughly confused with respect to which forms to use in reporting his business income and expenses. We find that petitioner, during the years at issue, (1) made a good-faith effort to comply with the provisions of the law and to cooperate with IRS officials, and (2) did not carelessly, recklessly, or intentionally disregard the rules or regulations. Accordingly, we find that petitioner is not liable for the negligence additions to tax and penalty as determined by respondent for any of the tax years at issue. Issue 6. Section 6661 Substantial Understatement
Respondent determined that petitioner is liable for the addition to tax for a substantial understatement of income tax under section 6661 for taxable year 1988. The amount of the section 6661 addition to tax for additions assessed after October 21, 1986, is equal to 25 percent of the amount of any underpayment attributable to the substantial understatement. Omnibus Budget Reconciliation Act of *479 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951; Pallottini v. Commissioner, 90 T.C. 498, 501-503 (1988). A "substantial understatement" occurs when an understatement exceeds the greater of $ 5,000 or 10 percent of the amount of tax required to be shown on a return. Sec. 6661(b)(1)(A). An "understatement" means the excess of the amount of the tax required to be shown on a return over the amount of tax imposed which is shown on the return (reduced by any rebates within the meaning of section 6211(b)(2)). Sec. 6661(b)(2)(A). Section 6661(b)(2)(B) provides for the reduction of an understatement by that portion of the understatement which is attributable to either: (1) The tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment; or (2) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. Petitioner has not shown that there was substantial authority for the tax treatment of the items for which we have held for respondent or that there was adequate disclosure of the items in the 1988 return. The *480 Commissioner may waive all or part of the section 6661 addition to tax upon a showing by the taxpayer that there was reasonable cause for the understatement and that the taxpayer acted in good faith. Sec. 6661(c). This Court may review the Commissioner's decision for an abuse of discretion. Mailman v. Commissioner, 91 T.C. 1079, 1083-1084 (1988). Our review of the Commissioner's decision not to waive this addition to tax is limited to whether the Commissioner's discretion has been exercised arbitrarily, capriciously, or without sound basis in fact. Id. at 1084; Smith v. Commissioner, 91 T.C. 733 (1988), affd. sub nom. Karr v. Commissioner, 924 F.2d 1018, 1026 (11th Cir. 1991). Section 1.6661-6, Income Tax Regs., sets out the standards for reasonable cause and good faith. The regulation provides that the most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability under the law. Sec. 1.6661-6(b), Income Tax Regs. Additionally, an honest misunderstanding of fact or law, which is reasonable in light of the experience, *481 knowledge, and education of the taxpayer, may indicate reasonable cause and good faith. [6]Id.
Given the standards provided in the regulations, which are set forth by the Commissioner, and the facts and circumstances of the instant case, we wonder just what it is that the Commissioner would find to constitute reasonable cause and good faith with respect to waiving the section 6661 addition to tax. See Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408. Accordingly, we find that based on the facts and circumstances in the instant case, including factors discussed with respect to the negligence issue above, and in light of petitioner's experience, education, and limited knowledge of the tax laws, respondent abused her discretion by failing to waive the addition to tax under section 6661. Thus, to the extent the Rule 155 computation shows *482 a substantial understatement within the meaning of section 6661(b)(1)(A) for taxable year 1988, we hold that petitioner is not liable for the addition to tax under section 6661. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Petitioner was able to document the following three capital expenditures in 1987, a truck purchase for $ 1,850, a chainsaw purchase for $ 200, and a motor overhaul costing $ 207.18. Respondent grouped these expenditures together for purposes of determining the allowable amount of depreciation under MACRS.↩
1. It is clear from both respondent's pretrial memorandum and posttrial memorandum, that the store was sold for $ 35,887.32 and not $ 39,887.32 as stated in the stipulation of facts at paragraph 17.↩
2. The stipulation of facts, at paragraph 27, contains a typographical error showing the figure $ 4,992.80 for documented cost of goods sold for 1989 which should be $ 5,992.80.↩
3. As the parties have stipulated to gross receipts for taxable years 1987 and 1989, only the amount of petitioner's gross receipts for 1988 remains in dispute.↩
4. See supra↩ notes 2 and 3.
5. The additions to tax for negligence under sec. 6653(a) were deleted for returns due after Dec. 31, 1989, and were replaced with an accuracy-related penalty under sec. 6662↩. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721(c), 103 Stat. 2106, 2399.
6. See also Klieger v. Commissioner, T.C. Memo. 1992-734↩.